IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA ANN B., ) | |
| ) | No. 20 C 7443 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Lisa Ann B. appeals the Acting Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Acting Commissioner's decision.

## Background

On September 8, 2018, plaintiff filed an application for benefits, which was denied initially, on reconsideration, and after a hearing. (R. 13-28, 102, 115.) The Appeals Council declined review (R. 1-3), leaving the ALJ's decision as the final decision of the Acting Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous,

it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citation omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Acting Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform ("RFC") her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from November 2, 2015, her alleged disability onset date, through September 30, 2017, her date last insured ("DLI"). (R. 15.) At step two, the ALJ found that, through the DLI, plaintiff had the severe impairments of wrist osteoarthritis, depression, anxiety, and degenerative disc disease of the lumbar and cervical spine. (*Id.*) At step three, the ALJ found that, through the DLI, plaintiff's impairments did not meet or medically equal a listed impairment. (R. 16-17.) At step four, the ALJ found that, through the DLI, plaintiff could not perform any past relevant work but had the RFC to perform light work with certain exceptions. (R. 20-21, 26.) At step five, the ALJ found

2

that, through the DLI, jobs existed in significant numbers in the national economy that plaintiff could have performed, and thus she was not disabled. (R. 27-28.)

Plaintiff contends that the ALJ wrongly assessed the opinions of plaintiff's treater Dr. Connolly, in part because she believed Connolly, who is a doctor, was a nurse practitioner. (R. 26.) Though the ALJ was wrong about Connolly's professional status, the error was harmless because the regulations deem both nurse practitioners and doctors to be acceptable medical sources. *See* 20 C.F.R. §§ 404.1502(a), 416.902(a).

Alternatively, plaintiff argues that the ALJ's rejection of Dr. Connolly's opinions is not supported by substantial evidence. In a statement dated April 8, 2019, Dr. Connolly said, among other things, that she had treated plaintiff for four years and plaintiff can: (1) stand/walk about four hours of an eight-hour workday; (2) needs a job that allows her to change positions at will; (3) needs to take unscheduled breaks for ten to fifteen minutes every four to six hours; (4) will be off task five to ten percent of a workday because of her pain; and (5) will have good days and bad days because of her impairments. (R. 444-47.)

> The ALJ found Connolly's opinions "unpersuasive" because:
>
> The claimant had abnormal clinical findings on the radiological evidence of her cervical spine, lumbar spine, and wrist. However, the record documented that she reported mild and no pain on several occasions. She also did not present in any distress and no concentration deficits were noted on exams. . . . [T]he claimant benefitted from physical therapy during the relevant period. Ms. Connolly's opinion is dated April 2019 and it is not clear that she participated in the claimant's treatment in the relevant time frame. Even if she had, her opinion is not consistent with the documented improvement with physical therapy and other treatment noted during the relevant time period.

(R. 26) (citations omitted).

Because Dr. Connolly said she had treated plaintiff since 2015 (R. 444), the ALJ erred in saying it was unclear whether the doctor treated plaintiff at the relevant time, *i.e.*, November 2,

3

2015 through September 30, 2017. (R. 26.) It is harmless error, however, if the ALJ's other reasons for rejecting Dr. Connolly's opinions—plaintiff sometimes told her treaters she had little or no pain and plaintiff's condition improved with physical therapy ("PT")[1]—are sound. The record shows that they are.

As plaintiff points out, she sometimes told her doctors she had significant pain. (*See* R. 423 (medical record dated 8/12/16 stating that the pain in plaintiff's neck pain was 9/10); R. 418 (1/5/17 medical record stating that plaintiff's pain score was 8/10); R. 449 (3/12/19 medical record stating that plaintiff's neck and shoulder pain was 4/10 at best and 6/10 at worst).) However, there were also times when she reported having little or no pain. (*See* R. 342 (2/23/16 medical record stating that plaintiff has "very mild occasional non-constant neck pain"); R. 344 (8/26/16 medical record stating that plaintiff was "having some episodes of some neck pain but they are not debilitating enough for her to be eagerly agreeable to surgery"); R. 401 (9/13/17 medical record stating that plaintiff requested a referral for PT for "right lower back/hip tightness" but denied having pain).) Moreover, the record shows that plaintiff's pain improved after PT. (*See* R. 1360, 1368, 1385-86.) The ALJ weighed all of this evidence, as was her duty, *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000), and determined that the record did not support Dr. Connolly's opinions. Because the ALJ's conclusion is supported by substantial evidence, the ALJ's error about the time period during which Dr. Connolly treated plaintiff is not a basis for remand.

Plaintiff also contests the ALJ's determination that plaintiff had the RFC to perform light work on much the same grounds, *i.e.*, that the ALJ resolved the conflicting evidence in a manner

---

[1] The ALJ also justified her rejection of Dr. Connolly's opinions on the fact that plaintiff "did not present [to her treaters] in any distress and no concentration deficits were noted on exams." (R. 26.) Concentration deficits are not, however, an issue because Dr. Connolly opined that plaintiff's off-task time was within the range the vocational expert said was acceptable to employers. (R. 73, 446.)

that was unfavorable to her.  (*See* ECF 15 at 10.)   For the reasons set forth above, that is not a basis for remand.

Alternatively, plaintiff argues that the ALJ erred by formulating the RFC without citing to plaintiff's hearing testimony.  The Court disagrees.  First, SSR 96-8p states that "[an] RFC assessment must be based on *all* of the relevant evidence in the case record," not that the ALJ must cite every piece of evidence she considers, and the ALJ said she did.  SSR 96-8p, 1996 WL 374184, at *5  (July 2, 1996) (emphasis in original); (R. 20 (ALJ stating that, among other things, she "considered [plaintiff's] statements as to the intensity, persistence, and effects of her symptoms in relation to the other evidence," in determining the RFC).)  Second, in the discussion about the RFC, the ALJ said:

> [Plaintiff] alleged that Schwannoma of neck and cervical spine, neural foramen narrowing, spinal stenosis, depression, and anxiety limited her ability to work.  At the hearing, [plaintiff] testified to problems with her back and shoulders, twitching in her back, sciatic pain down her calf, fatigue, and difficulty lifting overhead, reaching, and opening jars.  She reported that she laid on the floor and rolled a tennis ball on her back from 2015 to 2017.  She testified that she was not doing much of anything and mostly reclining.

(R. 21) (internal quotation omitted).  Clearly, the ALJ considered plaintiff's hearing testimony in fashioning the RFC.  The fact that she did not give it the weight plaintiff believes it deserves does not make it wrong.[2]

Finally, plaintiff argues that the ALJ's analysis of plaintiff's symptoms is faulty because she:  (1) selectively evaluated the evidence; (2) mentioned, but failed to explain the import of, plaintiff's history of receiving routine and conservative treatment; and (3) stated that plaintiff's activities were not what "'one would expect, given the complaints of disabling symptoms and

---

[2] Plaintiff contests the ALJ's conclusion that plaintiff is capable of semi-skilled work for the same reasons (*see* ECF 15 at 11-12), and for the reasons discussed *supra*, the Court rejects it as well.

5

limitations.'" (ECF 15 at 13-14) (quoting R. 25). The first argument, for the reasons discussed above, is a non-starter.

So is the second argument, that the ALJ's reference to conservative treatment is impermissibly cryptic. Clearly, the ALJ inferred from plaintiff's receipt of conservative treatment that her symptoms were not severe enough for her to seek more aggressive treatment. The record supports the ALJ's inference. (*See* R. 342 (notes of 2/23/16 neurosurgery consult stating that plaintiff "is having some very mild occasional non-constant neck pain" and her "current symptoms are not justifying any kind of acute neurosurgical intervention"); R. 340 (8/20/15 neurosurgical notes stating that the imaging studies of plaintiff's neck and her neurological exam were the same as those performed at prior visits and that surgery "might be a big procedure for a relatively young woman for complaints which are currently pretty mild"); R. 344 (8/26/16 neurosurgical notes stating that plaintiff "is having some episodes of some neck pain but they are not debilitating enough for her to be eagerly agreeable to surgery"); R. 456-57 (4/10/19 neurologist exam notes stating that the doctor recommended "usual conservative measures for neck pain and stiffness").) Thus, the ALJ's symptom analysis is not doomed by the reference to conservative treatment.

The same is true for the ALJ's statement about plaintiff's activities. Plaintiff testified that her pain during the insured period was so severe that she spent most of her time lying down. (R. 48.) But the record shows that, during the insured period, plaintiff did yard work and could perform personal care, lift heavy weights, drive, read, concentrate, and engage in her usual work and recreational activities without aggravating her pain. (R. 1193, 1357.) Moreover, after the insured period, Dr. Connolly noted that plaintiff's prior doctors had not advised plaintiff to restrict her activities. (R. 1143.) Given this evidence, the ALJ's observation about the extent of plaintiff's activities does not invalidate the symptom analysis.

6

**Conclusion**

For the reasons set forth above, the Court affirms the Acting Commissioner's decision, grants the Acting Commissioner's motion for summary judgment [20], and terminates this case.

**SO ORDERED.**                    **ENTERED: August 18, 2022**

**M. David Weisman**
**United States Magistrate Judge**